Case No. 15-1321 et al., Allied Aviation Service Company of New Jersey Petitioner v. NLRB. Mr. Leacy for the petitioner, Ms. Lynn for the respondent, and Mr. Tune for the intervener. Good morning, Your Honors. Good morning. May it please the Court, my name is Greg Leacy. I represent Allied Aviation Services Company of New Jersey. For the Court, I'd like to reserve two minutes for rebuttal, if I may. Your Honor, the first and foremost question in front of you today is whether or not the National Labor Relations Board even had jurisdiction to handle this case. Allied Aviation of New Jersey works at Newark Airport in New Jersey. Its primary function is pumping fuel into airplanes. It also has, for the common carriers at Newark, in fact, more than 40 common carriers at Newark Airport. It further performs functions as ramp services and mechanics to deal with the fueling issues on these jets, Your Honor. While it's not an air carrier, it is certainly subject to the Railway Labor Act because these airlines take their fuel very seriously. They keep a very close eye on this company. They have multiple committees that oversee this, including their budget, including their training, including weekly audits. These are a lot of facts that you're referring to, and I gather these are very sort of juicy, act-intensive questions. Yes, Your Honor. But you did not at the outset of this case, when you were first – whoever was representing Allied at that time was first asked whether this is a Railway Labor Act case. Said, well, I don't know. I'd have to look into that. And then, as I understand it, years passed, and the administrative officials whose role it is to find facts have processed this case in a couple of different settings, and were never asked to make these kind of findings. I know you did raise it before the Board just much more recently, but it's a little difficult to say that you can ride along, see how things are working out, and then turn around when they're not working in your favor and say, actually, let's go to the National Radiation Board. I understand exactly what you're saying, Your Honor. As you pointed out, I was not the attorney at the time, nor was my firm. However, this is a jurisdictional issue, Your Honor, and the Supreme Court has said multiple times, as has the Board held, that the jurisdictional argument is not waived. If the Board itself does not have jurisdiction to rule in this, even if it is brought up later in time, the issue is still whether or not the Board has such jurisdiction. As I understand our precedence, that this is something that can be waived. Well, Judge, in our brief at page 20, we list a whole series of cases that say that the contention that Congress explicitly excluded it from the Act's coverage surely is the type of jurisdictional challenge that the Board agrees can never be waived, Your Honor. So I do believe that Your Honor should take that into consideration here. As the Court has found and the Board itself has found before, if the Board lacks statutory jurisdiction over a particular respondent, the respondent's failure to raise the issue does not waive it. And that's why, eventually, Your Honor, you are correct. We did ultimately waive it to the 2013 and I believe it was the 2015 Board, Your Honor. You didn't ultimately raise it. Well, we did, Your Honor. We put it in our brief and our exceptions, which went to the 2015 Board. They didn't address it, and that's one of our contentions here, Your Honor. I thought the Board did address it. The first two Boards did not address it, Judge. I'm sorry. The 2015 Board ultimately did address it, but the 2012 Board and the 2013 Board did not address it, Your Honor. But you hadn't been raising it at those times. No. However, the Regional Director at the time had brought it up. It was never addressed. And then we brought it up in our exceptions that went to the 2015 Board. The 2015 Board found that the Board did have jurisdiction over it because it had a, essentially, to backtrack one quick second, there's a two-part test as to whether or not the National Labor Relations Board has jurisdiction over this company, Your Honor. The first part, I think everybody is in agreement that the first problem, Your Honor, is that whether or not fueling these planes is traditionally a duty of the airlines themselves or the common carrier. I think everybody is in agreement that that is true. In fact, there have been multiple Board cases that have found that in the past, specifically to allies' competitors, when they found that they did not have jurisdiction over allies' competitors, aircraft services, international mercury refueling, and the like. The second part of the test, though, Your Honor, which the 2015 Board did discuss, was supposed to have six factors as to the control over this company by the common carriers. The 2015 Board only looked at one of the six factors. So here's a question, and this is sort of slicing and dicing the jurisdictional question a little bit. If it's your burden to show that this should not be before the NLRB but before the NMB, and you have failed to press for the fact-finding that would support such a determination, then aren't we just stuck with the record that we have? And we can say, well, you know, maybe in some platonic sense you might be right, but on the record as we see it now, this is not a Railway Labor Act employer. Well, I think that there's two answers to that question or two parts to that answer, Judge. First is what we've already discussed, which is that jurisdictionally it never gets weighed. Well, the jurisdictional legal issue, that's why I'm saying I'm sort of slicing it a little bit, slicing the bologna here and saying, well, your opportunity to seek fact-finding that would support that, you can't go back and get that now. So you have to live with what the record shows. I'm sorry, Your Honor. Yes, I agree that what the record before you needs to be the record that it looks at. However, this record actually is replete with examples that show that the NLRB does not have jurisdiction. For example, at JA-1065, the board found that each airline and each type of aircraft has its own procedure for fueling. It talks about that there's a fuel committee at JA-71 that oversees allied operation. It talks about that the carriers must approve all staffing changes at JA-71. How about the fact that your client isn't even in a contract with the carriers but actually in a contract with the Port Authority? I saw that they raised that, Your Honor. I'm not sure that that matters. I think the key is do the common carriers have control over allied's operations? And it is clear from the record and the record that is in front of you that allied's books are regularly approved, their budget is regularly approved, not by the Port Authority, although the Port Authority does have some say, but specifically by the carriers. The carriers provide the training, Your Honor. It's in the record. They train all the employees? No, they train the trainers, Your Honor, which is very interesting. So they train the trainers who are allied employees, who are these very supervisors we're talking about, and then those supervisors train the employees who are already in a union, Your Honor, the IAM. But what is interesting is that when the FAA, who ultimately has government authority over this, go to the carriers and say, who are your trainers? They point to these very same allied supervisors. They hold out allied supervisors as their own trainers to the FAA. I thought you already – why are we looking at – why do you want us to make these kinds of decisions when the NLRB, under your approach, didn't do the analysis appropriately? I think that's exactly why, Your Honor, because the NLRB did not do the analysis appropriately. But why would we send it back to have the approach done appropriately rather than us doing it in the first instance? Oh, Your Honor, I think you could do this in the first instance. I think you could make this determination. I think you could order this to be sent to the National Mediation Board, or I think you could send it back to the NLRB to ultimately do the proper analysis. There's two problems with multiple prongs of the appeal here, Your Honor. But the major problem is they did not do the proper analysis. In all the different types of the arguments here, they didn't do the proper analysis. For example, when they made the argument, or we made the argument, that the board lacked constitutional authority because Noel Canning, the original 2012 board under Noel Canning did not – Before you go to Noel Canning, if we stick with the NMB issue for a moment. Yes, yes. So the argument that you made in your brief is that, look, what the NLRB slash NMB used to do is look at six factors. Yes. What they're doing now is they've truncated it to one factor that has to do with personnel decisions. Correct. Now what the board says, I think, in response is, you preserved a jurisdictional objection in that you argued that we misapplied our six-factor test. But insofar as you're arguing that that six-factor test has collapsed into a one-factor test, you didn't preserve that before the board. That's how I read their brief. What's your response to that? I disagree, Your Honor. I believe that the board made such a ruling and we appealed that ruling. The board did not properly rule using the proper six-factor test. It only looked at the one factor. When it only looked at the one factor, we appealed the issue. They made the argument that we should make a motion to re-argue, but there's nothing to – Motion to reconsider, right? A motion to reconsider, but there's nothing to per se judge reconsider. The facts in the record were the facts in the record. There weren't new facts here. The National Labor Relations Board misapplied the law. The standard was the six-part test. The standard is the six-part test because of this very case. They're relying on cases that concerned people who push a broom or push a vacuum cleaner. Here, these are the people who are fueling the jets, the thing most important to the airlines. They keep a very, very close eye. It is why the other five factors exist, Your Honor. The one factor about control of the personnel might be important for somebody who's cleaning the terminal, but it should only be a factor here when we're dealing with the people who are actually working on the planes, that if this work doesn't occur properly, not only do planes possibly fall out of the sky, but the airlines themselves would get sued. So you don't disagree that if the one factor that they looked at is the right factor, that you lose? I don't think that's the right factor, Your Honor. I don't know what I'm doing, but I'm just asking you to buy into that. Your Honor, if you're saying that the NMB has changed the factors from a six-factor test to a one-factor test, which they've started to seem to do, then I think the NMB has to tell us why it's doing it. It never says anywhere in any of the decisions since 2011 why it changed that. Now, whether or not, and I know that's not part of this per se appeal, Your Honor, whether or not they need public comment or anything else like that, I don't know. But the NMB seems to have begun harping on this one of the six factors. Now, what's interesting is those other cases that we're talking about, bags and airway cleaners and the like, they don't ignore the six-factor test. They talk about the six-factor test. Here in this case against Allied, the 2015 board ignores the six-factor test and only talks about the one-factor test. Had they taken the full six-factor test, they would have seen all of these things like daily audits and the like. I see I'm out of time, Your Honor. If you have any other questions about the other three aspects of the appeal, I'm certainly happy to do it. Okay, thank you. Good morning. In this case, the board did address the argument that was made about jurisdiction and the Railway Labor Act. So although the argument was raised late enough that, as has already been discussed this morning, there were not facts in the record related to this issue. There may be facts that came out in litigating the supervisory issue that have some relevance, and the board tried to look at those facts. But as to the question that they raised about the application of the six-factor test, which was a jurisdictional challenge which said this case belongs before the NMB instead of the NLRB, are you raising a waiver argument? We are not saying that they waived the jurisdictional issue. You're not saying that they waived it? The jurisdictional question. So you're pointing out that they raised it late, but you're not saying the late raising is a waiver?  Okay. And why are you not saying it's waived? Because are they right that it's a statutory question for you and that the board has bound itself to resolve statutory questions at any stage? The board has found that it has to resolve these jurisdictional issues when it has been raised at any stage. And in their brief, actually, they cite cases where this court has found similar, not on the NMB issue in particular, but on other jurisdictional issues. So then what were you saying in your brief? If you're not saying that there's a waiver of the jurisdictional argument, what were you saying in your brief when you said they needed to file a motion to reconsider? So the jurisdictional issue was raised and the board addressed it and made a ruling saying we have jurisdiction under our reading of the NMB's cases. After that happened, in their brief to this court, Allied is making the argument that the board is wrong about what the NMB has said, saying I believe they make a statement that the board misstated the NMB standard or the board said there was a new heightened standard that there actually is not. Well, I think they're saying that the NMB is applying a new standard and you're going along with it and that both of you have to justify it and that neither of you have. I don't think that we've read their argument that way, but I would say whether they're saying the board got the NMB standard wrong or the NMB standard is wrong or both, still at this point once the board has made a ruling based on their argument that there's no jurisdiction because there's RLA jurisdiction, the Allied never came back to the board to say, wait, we raised this issue and you didn't apply the correct test or you didn't look at the correct facts in the record. They never came back to the board to say that the board missed something or got something wrong. So they raised the jurisdictional objection, which is the same objection they're saying they're raising now, but they didn't raise a particular sub-aspect of it. So is that how finally we slice it, that there's some particular argument about how they styled it? They said you have six factors, you have to apply six factors, and now they're saying instead of applying all six factors, you applied one. Your argument is you only told us we had to apply all six factors. You didn't tell us that when we didn't apply all six and we only applied one that we were wrong to do that. When the board applied the board's reading of the NMB's precedent and said this is how we read these recent cases, this is what the NMB is focused on, citing the recent cases, the allied did not come back to the board to say you read those cases wrong, which is what we read their brief to have said to this court. Do you think the focus on the one factor isn't a shift from the focus on the six factors? I'm trying to understand. So in terms of the test, in this case, in their argument to the board, the allied didn't go through the six-factor test itself and say we have facts in the record to support all of these six factors. That wasn't the way that they presented their argument to the board. In response to the general argument based on some facts in the record that there should be NMB jurisdiction here, the board looked at what was in the record, which was just not much, and the board said, okay, looking at what's in the record that could go to this, to any factor under the test, the board said in recent cases, the NMB has focused on this idea of meaningful control over personnel decisions, has focused on whether this is typical of a contract for services, and went through and looked in this record and found nothing to support that. But in terms of what they did argue, J1388 to 1389, which is where they raised this issue, they recite the six factors. Do you recite the factors? And then they go into the evidence. They talk about two aspects of the evidence. Yes. So they talk about the evidence. Now, I agree with you. They don't go methodically through all six factors and say here's the evidence as to each. But they list the six factors, and they talk about how the evidence in the record supports them under those factors, at least under some of them. Well, under something. I mean, there is a recitation of the factors, and then there is a discussion of some facts in the record. I'm not sure that it goes back to the factors. And are you satisfied that the board has given a full response to any and all factors that it would give? Or if they haven't claimed that the shift from the six to one was arbitrary and capricious, but if they had, and if we were to say, well, that needs justification, would you say, well, fine, just look at the six, what we've done holds up under that, or no? Okay. Let me walk back through that. Right. So there's no claim here that any shift that has occurred in NMB law was arbitrary and capricious. In other words, they haven't really made the claim, but they sort of have. And if we were to go there, I mean, we're supposed to be deferring to the board, but if we thought that the right tests were, or at least no other tests had been fully justified, and that, therefore, the six-factor test is the test, we don't have something that you've done that the board has done to defer to, do we? The board did not, in this case, recite the six factors or analyze each factor. The board did look at NMB precedent and look at how that guides a decision in this case based on there not being meaningful control. And another thing here is that if you look at the other six factors and you look at the record in this case, there's really nothing for the board to talk about. There isn't evidence based on these other factors that was presented for the board to analyze or discuss. There weren't fact findings made because that hadn't previously been raised. And that you do think they've waived, the opportunity to have further fact finding? Yes, Your Honor. Even though this is a jurisdictional question? As far as I'm aware, they have not made any requests to reopen the record. So just looking at what facts there are, one thing about the way the case is briefed is a little baffling to me. It's that statute talks about whether the allied here is an employer subject to the RLA. And a lot of briefing talks about whether these employees and the relationship between the carrier and this subgroup of employees somehow meets the test. But it's the whole employer, right? It is the entire employer. It goes to whether the employer is under the indirect control of a carrier or carriers. I'm sorry. Go ahead. On this question of fact finding, is it the board's view that in this kind of circumstance, if somebody asked to reopen the record because they noted the jurisdictional issue late and they said, look, I know we're noting it late, we're pressing it late, but under the board's precedence, the board has to resolve it, we suggest that at this point there be a reopening of the record for the fact finding. Does the board have a rule that says, no, you can't do that? I'm not aware of any rule that says the board can do that, and I'm not aware of any case where that type of request has been made and acted on. Okay. Of course, this isn't that case because at the very get-go, was it the regional director who said, hey, shouldn't this be under RLA? Yes, that's right. The hearing officer in the original hearing in this case, before the election, had asked the general manager of Allied at the airport whether they were under the control of a carrier for RLA purposes, and he said, not that I know of. I would have to look into it, and it had never been discussed again after that. Another issue here, just to say another, in terms of the board applying the NMB's cases, these are cases, mensees, bags, airway cleaners, where the board had sought the NMB's position as to certain employers and had gotten response back from the NMB that the NMB didn't have jurisdiction. So in this case, there was no request to refer to the NMB, and we would say that to the extent the court is looking here at the board order under review, there was no request for a referral. So there was never any request that the NMB look at this case rather than the board. One other thing, and I thought of this when we were talking about a potential motion to reopen the record. In their reply brief, Allied states, in terms of dealing with the Noel Canning or Coram issue, that another problem with the board's, the invalid board decision to deny the request for review, is that they didn't have the opportunity to reopen the record to put it on evidence regarding whether these employees should be in the machinist unit. And I just wanted to point out, because this was in a reply brief only, that they never made any type of request to reopen the record or present that type of evidence. And therefore, we don't think that there is any problem with the Coram issue, because the full board or a fully confirmed panel of the board considered and rejected the arguments that were made in 2012. In terms of the supervisory issue, Allied had the burden here to show that these employees were statutory supervisors. And as we discussed in our brief and as the regional director discussed at length in the decision and direction of election, that burden was not met. I'm happy to answer any questions about that if you have any. Thank you. Thank you very much. Good morning, Mayor. Pleased to call Jay Chun on behalf of Local 553 International Brotherhood Teamsters. Allied Aviation and its employees cannot be subject to the Railroad Labor Act, because as Your Honor pointed out, the facts on the record shows clearly that Allied Aviation has a contract with only the Port Authority, the New York, New Jersey Port Authority, and not with any airline carrier, as different from any other cases cited by the petitioner. As per this contract with the Port Authority, Allied Aviation maintains and operates Port Authority's pipelines, Port Authority's tank farm, Port Authority's hydrants, and Port Authority's trucks as per its agreement. In a 2005 case, Bombardier Transit, the National Mediation Board, specifically struck down the idea that a company can be subject to the Railroad Labor Act based on some relationship with the New York, New Jersey Port Authority, the reason being the Port Authority is itself not a carrier, as that term is defined in the Railroad Labor Act. Mr. Chun, couldn't an entity be under contract with something like the Port Authority as a way of facilitating a relationship with what are many, many carriers, and sometimes carriers that come and go, just more stability and more kind of efficiency to contract with the Port Authority, but really take all control and direction from the carriers? I mean, the Port Authority's role there, too, is to serve the carriers, so it could be, couldn't it at least theoretically be set up in a way that the Port Authority is really kind of almost like a layer association to facilitate actual control? The record has no evidence indicating what the contract says between Allied Aviation and Port Authority, which gives any kind of control to the airline carriers. However, theoretically, if that were in the record, and the record clearly said that an airline carrier does have meaningful control over Allied Aviation and Allied Aviation would be punished or suffer some consequence, that would be a yes, but that is not in the record. Are the contracts typically in the record in these cases? In all cases. In every single case cited by the petitioner, used by us as well, except for Bombardier Transit, which I pointed out, deals with two components. Number one, is there a contract between a company and a carrier? Number two, if so, the analysis is, does the contract give meaningful control to that company? That element is missing in this case. We can't look at the contract. I mean, either the contract between Allied and the Port Authority and or the contract between the Port Authority and the carriers, right? We don't have either of those things in this record. We do not have those in the record. I do want to, with the remaining time, I do want to point out, I'm sorry, I actually don't have, I mean, I did want to correct a couple of things. The case, the board case, actually does reference the six steps, and it also says, according to the NMB's decisions in the post-2011 cases, there's insufficient record to show that Allied Aviation is a derivative carrier, but it also says, even if we use the dissents argument in Menzies, and the dissents argument, member Geale, G-E-A-L-E, specifically applies to six steps, and the board references that dissent and says, even under that old standard, Allied Aviation does not have the sufficient, I guess, I'm sorry, no airline carrier would have any meaningful control over Allied Aviation. Do you have a page set for that, just for my convenience? It is a two-page decision. I don't have it here. Right in there. Thank you, Your Honor. Thank you. Okay. You did not have any time left, but we'll give you one minute. Thank you, Your Honor. I appreciate it. Let me just address two very quick things. Judge Killard made, I thought, a very important point, what the standard of review here is. She was asking about arbitrary and capricious. I believe that that is, for this portion of the discussion, about applying the one prong instead of the six, that the standard of review is arbitrary and capricious, and you could look at your decision in Mojave Electric Co-op versus the NLRB. So I believe that is, in fact, the standard of review when you're looking at that. Secondly, just very quickly on the contracts, it doesn't say that the contracts are important. What it says is the control of the common carriers of Allied. That's what's important. And I'll just leave you with a quote from the record. It's a JA 1163. When a supervisor was testifying, he said, I work for Allied, but in turn I really work for all the 60 airlines also. That's very important, Your Honors, because it shows in the record that the airlines had control of this. The airlines had control, and I can point to, I can cite to all the different spots, but it's in there, that the airlines had up to weekly audits. They had yearly reviews. They had committees of the airlines that met, and the individual airlines met, because the individual airlines had their own procedures on fueling, that each employee of Allied had to be certified before they can do a specific airline. It wasn't like pushing the vacuum where you could clean any terminal. If you were United, you had to be certified by United. If you were American, you had to be certified by American. Carriers were very careful here, as well they should be, and that is why the RLA really applies here and not the NLR. Thank you, Your Honor. Thank you, Mr. Lacy. Case will be submitted.
judges: Brown, Srinivasan, Pillard